UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| UNITED STATES OF AMERICA, | |
|---|---|
| v. | |
| DOUGLAS E. CASTLE, | No. 18-CR-531 (KMK) |
| Defendant. | ORDER |
| ----------------------------------------- | |
| GEN MA, | |
| Petitioner | |

KENNETH M. KARAS, United States District Judge:

Third-party Petitioner Gen Ma ("Petitioner"), brings this Petition ("the Petition") pursuant to 21 U.S.C. §853(n), seeking recovery of funds held in an HSBC Hong Kong account ("the Account") and forfeited, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c), in connection with Defendant Douglas E. Castle's conviction for wire fraud. (*See* Pet. (Dkt. No. 36).) Petitioner asserts that he is the sole owner of Shengtong Technology Limited ("Shengtong"), a Chinese corporation, and that Shengtong possesses an interest in Account funds superior to that of the Government. (Pet'r's Mem. of Law in Opp'n. ("Pet'r's Mem.") 1–3 (Dkt. No. 42).) Before the Court is the Government's Motion To Dismiss the Petition ("the Motion"). (Not. of Mot. (Dkt. No. 39).) For the following reasons, the Motion is granted and the Petition is dismissed.

I. Background

On July 26, 2018, pursuant to a plea agreement with the Government, Castle pled guilty to one count of wire fraud, in violation of 18 U.S.C § 1343. (*See* Dkt. (minute entry for July 26,

2018).) In connection with this scheme, in November 2016, Castle induced a New York-based victim to wire $50,000 to a foreign company, "Shengtong," via the Account. (Gov. Mem. in Supp. Of Mot. ("Gov Mem.") 3 (Dkt. No. 40); *see also* Gov. Mem. Ex. A ("July 20, 2018 Restraining Order") 1–2 (Dkt. No. 40-1).) Similarly, on or about February 28, 2017, after having fraudulently received hundreds of thousands of dollars of victims' money, Castle transferred at least an additional $49,990 to the Account. (*See* July 20, 2018 Restraining Order 2.)

On December 17, 2018, the Court entered a preliminary forfeiture order (the "Forfeiture Order") against Castle for $825,000.00, the sum of traceable funds associated with Castle's wire fraud scheme. (*See* Dkt. No. 29.) The Forfeiture Order further specified that Castle forfeited all "his right, title, and interest in . . . any and all funds in [the Account] held in the name of Shengtong." (*Id.* (italics omitted).)

Several months after the Government's public notice of the forfeiture, Petitioner filed his claim for a portion of the forfeited assets on December 11, 2019. (*See generally* Pet.) Petitioner alleges that he is the sole owner of Shengtong, and that Shengtong transacted with a Ghana-based company owned by Castle, Andy-D-Enterprise, for the sale of second-hand clothing. (Pet'r's Mem. 1–3.) In support of his Petition, Petitioner appends several exhibits, including: a certificate establishing a foreign corporate entity's change of name to "Shengtong," sales contracts and emails between Shengtong and Andy-D-Enterprise, photographs, shipping records, and a bank statement. (Pet. Exs. 2–12 (Dkt. Nos. 36-2–36-12).). On February 20, 2020, the Government filed its Motion and supporting Memorandum. (Dkt Nos. 39–40.) Approximately two weeks later, Petitioner filed his Opposition (*see* Pet'r's Mem.). On June 5, 2020, the Government filed a Reply. (Dkt. No. 58.)

## II. Discussion

### A. Applicable Law

When a third party wishes to assert a legal interest in property which has been ordered (criminally) forfeited, he may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). The criminal forfeiture statute provides certain threshold requirements for such petitions:

> The petition shall be signed by the petitioner under penalty of perjury and shall set forth the *nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property,* any additional facts supporting the petitioner's claim, and the relief sought.

21 U.S.C. § 853(n)(3) (emphasis added). These specifications "are not simply technical requirements, but are construed strictly to discourage false or frivolous claims." *United States v. Preston*, 123 F. Supp. 3d 117, 125 (D.D.C. 2015) (citations and quotations omitted). Accordingly, failure to satisfy these requirements is grounds for dismissal of a petition without a hearing. *See United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015) ("Without proceeding to a formal hearing . . . the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." (citation and quotation marks omitted)); *United States v. Patel*, No. 16-CR-85402, 2019 WL 3216654, at *4 (E.D.N.Y. July 17, 2019) (dismissing a petition where claimants had "assert[ed] in conclusory fashion an ownership interest in each [subject property], devoid of any effort to satisfy—or, indeed, even address—the pleading requirements" of the forfeiture statute).

Ultimately, a petitioner must establish by a preponderance of the evidence that he possesses an interest in the property superior to that of the Government. *See* 21 U.S.C. §

3

853(n)(6); *see also United States v. Nektalov*, 440 F. Supp. 2d 287, 295 (S.D.N.Y. 2006) ("If the petitioner establishes by a preponderance of the evidence that it has a superior legal interest in the property than the Government, who, for the purpose of this hearing, stands in the defendant's shoes, the court will amend the order of forfeiture accordingly."). To establish such a superior interest, a petitioner "must either (a) have an interest in the property that is superior to the criminal defendant's because it arose prior to the time of the commission of the acts [that] gave rise to the forfeiture, or (b) be a bona fide purchaser for value of the property who was reasonably without cause to believe that the property was subject to forfeiture at the time of purchase." *Pacheco v. Serendensky*, 393 F. 3d 348, 353 (2d. Cir. 2004) (citations and quotation marks omitted). In other words, the petitioner must either hold an interest in the property that pre-dates the commission of the subject crime (and therefore pre-dates the vesting of the government's interest), *or* have innocently acquired the property after the crime. *See United Sates v. Chowaiki*, 369 F. Supp. 3d 565, 572 (S.D.N.Y. 2019) (citing *Watts*, 786, F. 3d at 166).

B. Application

1. Standing

As a preliminary matter, the Petition must be dismissed because Petitioner has failed to satisfy standing requirements. In order to establish standing under 21 U.S.C. § 853(n), a petitioner must allege that he "possess[es] a legal right, title, or interest in the property that was forfeited." *DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007) (citation and quotation marks omitted). Here, Petitioner has not alleged that he himself holds any "legal interest in" the Account. On the contrary, Petitioner alleges that the Account "belongs to Shengtong," not Petitioner himself. (Pet. 3.)

4

Seeking to cure this defect, Petitioner counters that he "owns 100% of Shengtong as the sole owner," and therefore possesses sufficient legal interest to bring the instant Petition. (Pet'r's Mem. 2.) However, regardless of the accuracy of Petitioner's assertion of ownership of Shengtong, his legal conclusion is without merit. In forfeiture actions, courts look to "law of the jurisdiction that created the property right to determine the petitioner's legal interest." *United States v. Speed Joyeros, S.A.*, 410 F. Supp. 2d 121, 125 (E.D.N.Y. 2006); *see also United States v. All Right, Title & Interest in Real Prop., Appurtenances, & Improvements*, No. 98-CV-2279, 2005 WL 2649001, *4 (S.D.N.Y. Oct. 14, 2005) (applying Canadian law to determine that individual shareholders did not have an ownership interest is property owned by a Canadian corporation, and therefore lacked standing to contest a civil forfeiture). Here, the Petition lacks any allegation about what kind of corporate entity Shengtong is, the jurisdiction of its incorporation (whether Hong Kong or elsewhere), the factual basis for Petitioner's supposed ownership of the company in light of its corporate structure, and the legal basis for Petitioner's claim of an interest in the company's specific assets. (*See generally* Pet.) Moreover, it is a well-established corporate principle that corporations are legally distinct entities from their shareholders, officers, or members. *See United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993) (explaining that where title to property is held by corporations, individual claimants would not have standing to challenge a forfeiture); *United States v. Dupree,* 781 F. Supp. 2d 115, 140 (E.D.N.Y. 2011) (explaining that a shareholder lacks standing to challenge the seizure of the corporation's bank account). Thus, courts in many jurisdictions, including New York, have explained that while members of limited liability companies or shareholders of a corporation possess an interest in the shares of their company, they do *not* possess any interest in the

5

company's assets. *See United States v. Wallach*, 935 F.2d 445, 462 (2d Cir. 1991) ("[S]hareholders do not hold legal title to any of the corporation's assets. Instead, the corporation—the entity itself—is vested with the title . . ."); *All Right*, 2005 WL 2649001, at *4 ("[A] shareholder in a corporation chartered in Ontario does not have standing to contest the forfeiture of any of the specific assets of that corporation, just as if the entity had been incorporated in New York."). Accordingly, because Petitioner's allegations provide no indication that the law of Shengtong's place of incorporation deviates from the well-established principle that "shareholders do not hold legal title to any of the corporation's assets," *Wallach*, 935 F.2d at 462, Petitioner's assertion of ownership of Shengtong does not support his personal legal interest in the Account. Accordingly, the Court dismisses the Petition for lack of standing. *See DSI*, 496 F.3d at 184 (affirming denial of leave to intervene for lack of standing in a criminal forfeiture action because the proposed intervenor did not possess a "legal right, title, or interest in the property").

### 2. Merits

The Petition must also be dismissed on the merits. As noted above, a third-party petitioner seeking to prevent a criminal forfeiture must establish either (a) that his interest in the property "arose prior to the time of the commission of the acts [that] gave rise to the forfeiture," or (b) that he is "a bona fide purchaser for value of the property who was reasonably without cause to believe that the property was subject to forfeiture at the time of purchase." *Pacheco*, 393 F. 3d at 353–56 (citations and quotation marks omitted). Here, Petitioner has specifically disclaimed the second possibility, explaining that he is not relying on a "'bona fide purchaser'

6

defense." (Pet'r's Mem. 3–4.) Accordingly, Petitioner can only succeed by establishing that his interest in the funds preceded the acts giving rise to the forfeiture.

This, Petitioner cannot do. As the Second Circuit has explained, "a petitioner is unlikely ever to prevail [in establishing a prior interest in forfeited property] where the forfeited property consists of 'proceeds' derived from or traceable to a criminal offense." *Watts*, 786 F.3d at 166. This is so, "[b]ecause, by definition, the proceeds of an offense do not exist before the offense is committed, and because the government's interest . . . immediately vests upon the commission of that offense. *Id.* at 166-167 (citations and quotations omitted). Thus, "any proceeds that ensue from the criminal act belong to the government from the moment that they come into existence." *Id.* Here, the Court has determined that Castle's and a victim's transfers of money into the Account were proceeds of wire fraud. (*See* July 20, 2018 Restraining Order 1–2.) Petitioner does not dispute this. (*See generally* Pet.) The Government's interest in those funds therefore vested immediately upon the commission of the fraud, before Petitioner took possession of these funds from Castle and Andy-D-Enterprise (whether innocently or otherwise). *See United States v. King*, No. 10-CR-122, 2012 WL 2261117, at *6 (S.D.N.Y. June 18, 2012) (explaining that "crime proceeds, by definition, do not precede the commission of criminal activity but instead result from that criminal activity").

Moreover, the Petition (and Petitioner's subsequent collection of submissions) is devoid of any suggestion that the funds in the Account came from any source *other than* transfers from Castle. Indeed, Petitioner names only one source for the funds in the Account: Andy-D-Enterprise, a company Petitioner acknowledges was owned by Castle. (*See* Pet. 3.) Petitioner also provides no details regarding when the funds currently in the Account were transferred by

7

Castle or anyone else. Nor does Petitioner even deny that the funds are the proceeds of Castle's frauds. Absent such detail, Petitioner cannot plausibly allege that his own interest in the funds precedes that of the Government. *See Patel*, 2019 WL 3216654, at *4 (dismissing a petition where claimants "assert[ed] in conclusory fashion an ownership interest in each [subject property], devoid of any effort to satisfy—or, indeed, even address—the pleading requirements" of the forfeiture statute). Accordingly, the Petition must be dismissed on the merits as well. *See United States v. Raniere*, 18-CR-204, 2020 WL 264958, at *2 (E.D.N.Y. Jan. 17, 2020) (dismissing a third-party petition seeking to prevent forfeiture because the petition contained "numerous conclusory assertions concerning the nature and scope of [petitioner's] interest" rather than specific factual allegations establishing the petitioner's interest).

### III. Conclusion

For the foregoing reasons, the Government's Motion is granted, and the Petition is dismissed. The Clerk of Court is respectfully directed to terminate the pending motion, (Dkt. No. 36).

SO ORDERED.

DATED:   July **20**, 2020
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE