**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

# MEMO ENDORSED

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

December 9, 2020

**VIA ECF**
Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re:   **United States v. Douglas Castle**
      **18 Cr. 531 (KMK)**

Dear Judge Karas,

     I write in reply to the government's letter of December 8, Dkt. No. 65, and in further support of Mr. Castle's renewed motion for compassionate release.

     The government claims that their office's inconsistent prior representations about the virus at Fort Dix—whether the positive tests (and, thus, the dangers posed by COVID-19) were at the low facility or the Camp in the summer—were both accurate. Dkt. No. 65. Their explanation appears to turn on different interpretations of an identical phrase: "at the Camp." See id. Apparently, in Mr. Castle's case, the United States Attorney's office wrote housed "at the Camp," and meant inmates who were physically housed at the Camp; in Mr. Zarzar's case, the United State Attorney's office wrote housed "at…the…Camp," and meant inmates who were assigned to be housed at the Camp. Id. (relying on Gov't Ltr., United States v. Zarzar, 18 Cr. 177 (JMF), Dkt. No. 51 (July 27, 2020)). In other words, the government claims: even though we made two opposite representations, they were both true. See id.

     These factual gymnastics lay bare the government and BOP's efforts to obscure the true dangers posed to federal inmates during this global pandemic. The facts at Fort Dix did not change—the only difference was that Mr. Castle was at the Camp and sought release and Mr. Zarzar was at the low facility and sought release. The United States Attorney's Office for the Southern District of New York, in an effort to oppose both defendant's motions, apparently used interpretations of "at the Camp" that likely led both judges (Your Honor and the Honorable Jesse M. Furman, respectively) to believe that the dangers lay at the opposite location of the defendant each judge was considering. Indeed, this Court explicitly relied on the government's representation in denying Mr. Castle's original motion: "making Mr. Castle's reliance on statistics for…the other wings at Fort Dix misplaced." Dkt. No. 56.

1

More importantly, however, the history of the virus at FCI Fort Dix (as a whole) demonstrates that BOP inmates are not protected from this highly contagious disease. Indeed, the declaration submitted by the government on December 2, see Dkt. No. 62-1, indicated that the "BOP [had] implemented COVID Quarantine guidance" and followed the protocols regarding the newly-arrived transferred inmates from FCI Elkton, but, still there was an outbreak at the facility. See id. FCI Fort Dix maintains that "there is no evidence that the outbreak in unit 5812 [where there are 221 positive inmates] or the SHU...had any relation to the Elkton inmates." Id. Yet that, too, raises more questions than it answers: if the transfers are not responsible for the current outbreak: what is? And if the BOP cannot answer that question, they also cannot successfully combat it.

Finally, the government again fails to respond to Mr. Castle's contention that no inmates at the Camp (including him) have been tested during the recent outbreak. Instead of actually reporting how many—if any—tests have been conducted at the Camp, it refers the Court to the policy regarding testing. (And refers to the Camp's decision to test "every single inmate" back in May, as if such outdated testing is probative of anything regarding any single inmate in December.) Why the lack of transparency? If the government is touting "no new positive COVID-10 tests" at the Camp, then it should tell the Court if there were any new tests at all. If, in fact, there were none (and the more accurate representation is that the Camp is reporting neither new positive nor new negative tests), then the Court should discount the impact of the government's claim.

For all of the reasons previously articulated, including Mr. Castle's individual risk factors for COVID-19 and the fact that he has just reached the 50% point of his sentence, see Dkt. Nos. 60, 63, we ask for compassionate release.

Respectfully submitted,

/s/
Sylvie Levine

The renewed motion for compassionate release is denied. The original motion was denied, but without prejudice should circumstances change. Mr. Castle claims the circumstances have changed, owing to the recent oubreak of COVID cases at Fort Dix. However, the outbreak has not spread to the camp at Fort Dix, where Mr. Castle is being held. Mr. Castle attempts to counter this point by citing representations made by the US Attorney's Office ("the Office") for this District in a different case suggesting that, contrary to representations by the Office in this case, there have been some positive cases at the camp. The Office has explained this apparent discrepancy to the satisfaction of this Court, noting that the positive tests (back in July) did not originate with inmates at the camp. Moreover, even if there were a handful of positive cases at the camp, they happened over four months ago.

The only other change in circumstances identified by Mr. Castle is that he has served more time since his first motion was denied (now reaching 50% of his sentence). However, the passage of a few months does not change the Court's view that the Section 3553(a) factors argue strongly against early release here, especially given Mr. Castle's problematic criminal history.

The application is therefore denied.

So Ordered.

12/9/20